# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>A black backpack ("Target Backpack")<br>Currently in possession of the FBI, located at<br>10385 Vista Sorrento Pkwy, San Diego, CA 92121 | Case No.   '22  MJ3806 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Southen___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |
| 15 U.S.C. § 78j(b) & 78ff | Securities Fraud |
| 18 U.S.C. § 1073 | Unlawful Flight to Avoid Prosecution |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jessica Hefron, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ *(specify reliable electronic means)*.

Date: 10/14/2022

*Judge's signature*

City and state: San Diego, California     Hon. Barbara L. Major, United States Magistrate Judge
                                          *Printed name and title*

# Affidavit

I, FBI Special Agent Jessica Hefron, being first duly sworn, hereby depose and state as follows:

## I. Introduction and Agent Background

1. I make this affidavit in support of an application for a search warrant under 18 U.S.C. §§ 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to search a black backpack (Target Backpack) in the possession of the FBI in San Diego; and any digital devices or other electronic storage media located therein, for evidence, fruits, and instrumentalities of the crimes of Wire Fraud, in violation of Title 18, United States Code, Section 1343, Securities Fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Unlawful Flight to Avoid Prosecution, in Violation of Title 18, United States Code, Section 1073. The Target Backpack in the custody of the Federal Bureau of Investigation in San Diego. The Target Backpack is described herein and in Attachment A, and the items to be seized are described in Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since June 2021. While working as an FBI Agent, I have conducted, or participated in, investigations of various violations of federal law. I have conducted, and assisted in, the execution of numerous arrest warrants, search warrants, and seizure warrants. The squad I am assigned to specializes in investigating all forms of economic crimes, including corporate, securities, financial institution, bank, and investment fraud. I completed approximately nineteen weeks of training at the FBI Academy in Quantico, Virginia. During the training, I received instruction in a variety of investigative techniques commonly used in support of a wide range of the FBI's investigative priorities. The training included instruction regarding the use of confidential human sources, electronic and physical surveillance techniques, law enforcement tactics, search and seizure laws

and techniques, interviewing strategies and skills, and a variety of other subjects. Prior to becoming a Special Agent with the FBI, I worked as an Intelligence Specialist focusing on Human Intelligence and Counterintelligence for six years in the United States Navy.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses, including FBI Special Agent Kathleen Moran, who has been a Special Agent since 2005, specializes in economic crime, and has extensive experience investigating white-collar crime, including wire fraud, mail fraud, bank fraud, securities fraud, money laundering, and theft of government and public money. SA Moran is the lead agent for this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## II. Probable Cause

### A. Background

4. On September 28, 2022, a federal Grand Jury in the Western District of Washington indicted Justin COSTELLO for multiple counts of Wire Fraud, in violation of Title 18, United States Code, Section 1343, and Securities Fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff. An arrest warrant for Justin COSTELLO was issued the same day.

5. Before obtaining the Indictment, the United States Attorney's Office for the Western District of Washington had an agreement with Justin COSTELLO's defense attorney to allow Justin COSTELLO to self-surrender after the Grand Jury returned an Indictment. On September 28, 2022, shortly after the Indictment was returned, Assistant United States Attorney Justin Arnold and SA Moran spoke with Justin COSTELLO's counsel and told counsel that Justin COSTELLO needed to self-surrender to the FBI the next morning. Justin COSTELLO's counsel

said that he needed to speak with Justin COSTELLO and that he would call back. Within a few minutes, Justin COSTELLO's counsel called back and said that Justin COSTELLO agreed to self-surrender at the FBI's San Diego Field Office the following morning at 9 a.m. Later in the evening of September 28, AUSA Arnold emailed Justin COSTELLO's counsel and asked him to have Justin COSTELLO at the FBI by 7 a.m. the next morning. On the morning of September 29, 2022, the morning Justin COSTELLO was supposed to self-surrender, Costello's counsel indicated he had passed the message along to Justin COSTELLO. Justin COSTELLO failed to appear at the FBI San Diego Field Office. Neither his counsel nor Justin COSTELLO ever contacted law enforcement to explain why he failed to appear or where he was, and counsel soon told AUSA Arnold that he had stopped representing Justin COSTELLO.

6. On September 30, 2022, a search warrant was obtained in the Western District of Washington for location information for two cell phone numbers known to be used by Justin COSTELLO. Information provided by T-Mobile in response to the search warrant indicated that either T-Mobile could not locate the cell phones or Justin COSTELLO had turned them off.

7. As investigators tried to track the fugitive Justin COSTELLO, they learned that he was driving an Alfa Romeo with Sirius Interconnected Radio Services satellite radio. Agents obtained a search warrant requiring Sirius to produce location information. Using that information, on October 4, 2022, FBI Agents located Justin COSTELLO at 14864 Crystal View Drive, El Cajon, California. This location includes a residence, a trailer, and several shipping containers. Agents saw the Alfa Romeo parked on the property, and saw Justin COSTELLO enter and leave a trailer and a container. Agents also saw Justin COSTELLO remove what appeared to be a black backpack from the Alfa Romeo. Justin COSTELLO was then taken into custody by FBI Agents.

8. Justin COLSTELLO admitted to the arresting agents that he knew there was an arrest warrant for him. He claimed to have no identification, and the only property found on him was his wedding ring and two toothpicks. Justin COSTELLO did not have a phone on him, but implied that his phone was nearby, as he asked agents whether they had tracked him by his phone. Justin COSTELLO said that he had thought about running from the arresting officers but did not because he had a stroke the previous Thursday. Justin COSTELLO said that he had been sleeping in the Alfa Romeo.

### B. The Target Backback

9. On October 6, 2022, a witness whose identity is known to law enforcement (where Justin COSTELLO was arrested) contacted law enforcement and reported that the witness had discovered, in the vicinity of a shipping container that Justin COSTELLO had entered, a black backpack (the Target Backpack) bearing the name and logo of "Ruger," a firearms manufacturer. The witness informed law enforcement that the witness looked inside the Target Backpack and saw identification documents, gold bars, and a wristwatch. FBI agents retrieved the Target Backpack from the witness that day and did an inventory search to make sure it did not contain firearms or dangerous material, and to account for and secure any valuables. (To avoid any possible claim of taint from the inventory search, this affidavit does not state what agents found in the inventory search.) The Target Backpack is now in the custody of the FBI in San Diego at 10385 Vista Sorrento Pkwy, San Diego, California, 92121.

### C. Items Likely To Be Found In The Target Backpack

10. From my training and experience, and the information provided by the witness, I know that it is likely that evidence, proceeds, and instrumentalities of the crimes of Wire Fraud, in violation of Title 18, United States Code, Section 1343, Securities Fraud, in violation of Title 15,

4

United States Code, Sections 78j(b) and 78ff, and Unlawful Flight to Avoid Prosecution, in Violation of Title 18, United States Code, Section 1073, will be found in the Target Backpacks.

11. With respect to evidence of Unlawful Flight, I know that fugitives often procure, and carry, items to help them during flight, such as cash or other valuable they can use to support themselves (which may be proceeds of crimes), computers or other digital devices they can use for planning and communication, and false identification documents. Fugitives typically carry these items on their person or in places they can easily access, including a backpack.

12. There is also probable cause to believe that proceeds of crimes will be found in the Target Backpack. Justin COSTELLO owned and operated Pacific Banking Corp., which provided banking services to marijuana businesses located in the State of Washington, Colorado, California, Illinois, and Alaska. The indictment charged Justin COSTELLO with defrauding three marijuana businesses. As part of his banking services, Justin COSTELLO also accepted large amounts of cash from marijuana businesses. Justin COSTELLO showed bags filled with cash to investors and friends and shared photographs of large amounts of cash. In addition, Justin COSTELLO routinely deposited cash into bank accounts that he controlled. Given that Justin COSTELLO defrauded three of his marijuana clients, there is probable cause to believe that he defrauded additional marijuana clients who gave him cash to deposit into bank accounts.

13. On October 6, 2022, SA Moran spoke to D.L, a jeweler in San Diego. Justin COSTELLO purchased $94,000 of gold coins from D.L. on or about April 25, 2022. The funds used to purchase the gold coins came from a $140,000 payment that Justin COSTELLO received in exchange for the sale of the majority of the shares of GRN Holding Corp. As discussed in the indictment, Justin COSTELLO purchased the majority of the shares of GRN Holding Corp. (then known as

Discovery Gold Corp.) in 2019 using funds Justin COSTELLO misappropriated from a marijuana banking client.

14. In addition to the coins, D.L. also sold Justin COSTELLO a gold pistol pendant necklace that was covered in rubies, emeralds, and diamonds. Justin COSTELLO paid D.L. $4,000 in cash and he still owes D.L. an additional $3,000 to $4,000.

15. Justin COSTELLO did not tell D.L. what he intended to do with the gold coins or where he intended to store them. Justin COSTELLO sent D.L. a text in August 2022, stating that he was in El Cajon with a contractor on a commercial job. Justin COSTELLO also wrote that he needed to go to a vault. Given that Justin COSTELLO was arrested in El Cajon, the information from the witness, and the other facts, there is probable cause to believe that the gold coins, cash, or other proceeds may be in the Target Backpack.

16. As discussed below, there is also probable cause to believe the Target Backpack contains digital devices that have evidence of, or are instrumentalities of, the crimes under investigation.

### III. Electronic Evidence in Digital Devices

17. As set forth more fully below, this warrant seeks authorization to seize and search digital devices contained within the Target Backpack. From my training and experience, I know that people involved in fraud and other economic crimes frequently use digital devices to further their crimes, including communications (often with victims, co-conspirators, and financial institutions), record keeping to track of their fraudulent activity and profits, and in numerous other ways. Indeed, it is almost impossible to commit any significant fraud without extensive use of digital devices. The investigation has shown that this case is no exception. Justin COSTELLO used digital devices frequently and extensively. To cite just some examples, agents have previously obtained search warrants for retained communications and associated records of Facebook and Twitter accounts

used by Justin COSTELLO to communicate with investors and with an unindicted co-conspirator. Justin COSTELLO also used his cell phone to text with investors. Based on the investigation, I believe additional electronic evidence relating to the wire fraud and securities fraud schemes will likely be found in the personal cellular telephone, computer, and other digital storage devices belonging to Justin COSTELLO. In addition, the digital storage devices belonging to Justin COSTELLO may provide information about how he fled from justice, and any help he received from others during his flight.

### IV. Computers, Electronic Storage, and Forensic Analysis

18. As described above, this application seeks permission to search for evidence, fruits and/or instrumentalities that might be found at the location to be searched, in whatever form they are found. One form in which the evidence might be found is data stored on digital devices1 such as computer hard drives or other electronic storage media.2 Thus, the warrants applied for would authorize the seizure of digital devices or other electronic storage media or, potentially, the copying of electronically stored information from digital devices or other electronic storage media, all under Rule 41(e)(2)(B).

19. *Probable cause.* Based upon my review of the evidence gathered in this investigation, my review of data and records, information received from other agents and computer forensics examiners, and my training and experience, I submit that if a digital device or other electronic storage media is found in the location to be searched, there is probable cause to believe that evidence, fruits and/or instrumentalities of the crimes of Title 18, United States Code, Section 1343 will be stored on those digital devices or other electronic storage media. The investigation has revealed that digital devices or other electronic storage media were being used to communicate with investors and an unindicted co-conspirator. There is, therefore, probable cause to believe that

evidence of the crimes of Title 18, United States Code, Section 1343 exists and will be found on digital devices or other electronic storage media at the location to be searched, for at least the following reasons:

  a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be preserved (and consequently also then recovered) for months or even years after they have been downloaded onto a storage medium, deleted, or accessed or viewed via the Internet. Electronic files downloaded to a digital device or other electronic storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a digital device or other electronic storage media, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

  b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the digital device or other electronic storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

  c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

  d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

20. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how digital devices or other electronic storage media were used, the purpose of their use, who used them, and

when. There is probable cause to believe that this forensic electronic evidence will be on any digital devices or other electronic storage media located in the location to be searched because:

a. Stored data can provide evidence of a file that was once on the digital device or other electronic storage media but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the digital device or other electronic storage media that show what tasks and processes were recently active. Web browsers, email programs, and chat programs store configuration information that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the history of connections to other computers, the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the digital device or other electronic storage media was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner and/or others with direct physical access to the computer. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information

indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a digital device or other electronic storage media works can, after examining this forensic evidence in its proper context, draw conclusions about how the digital device or other electronic storage media were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a digital device or other electronic storage media that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, digital evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a digital device or other electronic storage media was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

### V. Digital Devices as Instrumentalities of the Crimes

21. There is probable cause to believe that digital devices were instrumentalities of the crimes in this case. Justin COSTELLO used digital devices to communicate with investors and with an unindicted co-conspirator.

### VI. Past Efforts to Obtain Electronically Stored Information

22. As noted above, investigators have obtained records from Twitter and Facebook. However, investigators have not approached Justin COSTELLO directly for evidence. Were Justin COSTELLO to learn of investigators interest in obtaining his digital devices, he may attempt to destroy potential evidence, whether digital or non-digital.

### VII. Search Techniques

23. Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, the warrant I am applying for will permit seizing, imaging, or otherwise copying digital devices or other electronic storage media that reasonably appear capable of containing some or all of the data or items that fall within the scope of Attachment B to this Affidavit, and will specifically authorize a later review of the media or information consistent with the warrant.

24. As with any search warrant, I expect that this warrant will be executed reasonably. Reasonable execution will likely involve conducting an investigation on the scene of what computers, or storage media, must be seized or copied, and what computers or storage media need not be seized or copied. Where appropriate, law enforcement personnel will copy data, rather than physically seize computers, to reduce the extent of disruption. If, after inspecting the computers, it is determined that some or all of this equipment is no longer necessary to retrieve and preserve the evidence, the government will return it.

25. Consistent with the above, I hereby request the Court's permission to seize and/or obtain a forensic image of digital devices or other electronic storage media that reasonably appear capable of containing data or items that fall within the scope of Attachment B to this Affidavit, and to

conduct off-site searches of the digital devices or other electronic storage media and/or forensic images, using the following procedures:

a. *Processing the Search Sites and Securing the Data*

    i. In order to examine the electronically stored information ("ESI") in a forensically sound manner, agents or law enforcement personnel with appropriate expertise will attempt to produce a complete forensic image, if possible and appropriate, of any digital device or other electronic storage media that is capable of containing data or items that fall within the scope of Attachment B to this Affidavit. Employees of the United States Attorney's Office may assist in identifying the material within the scope of Attachment B.

    ii. A forensic image may be created of either a physical drive or a logical drive. A physical drive is the actual physical hard drive that may be found in a typical computer. When law enforcement creates a forensic image of a physical drive, the image will contain every bit and byte on the physical drive. A logical drive, also known as a partition, is a dedicated area on a physical drive that may have a drive letter assigned (for example the c: and d: drives on a computer that actually contains only one physical hard drive). Therefore, creating an image of a logical drive does not include every bit and byte on the physical drive. Law enforcement will only create an image of physical or logical drives physically present on or within the subject device. Creating an image of the devices located at the location to be searched described in Attachment A will not result in access to any data physically located elsewhere. However, digital devices or other electronic storage media at the location to be searched described in Attachment A that have previously connected to devices at other locations may contain data from those other locations.

b. *Searching the Forensic Images*

    i. Searching the forensic images for the items described in Attachment B may require a range of data analysis techniques. In some cases, it is possible for agents and analysts to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant, and law enforcement may need to conduct more extensive searches to locate evidence that falls within the scope of the warrant. The search techniques that will be used will be only those methodologies, techniques and protocols as may reasonably be expected to find, identify, segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to this affidavit. Those techniques, however, may necessarily expose

many or all parts of a hard drive to human inspection in order to determine whether it contains evidence described by the warrant.

## VIII. CONCLUSION

26. For the reasons set forth above, there is probable cause to believe that evidence, fruits and/or instrumentalities of the crimes of Wire Fraud, in violation of Title 18, United States Code, Section 1343, Securities Fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Unlawful Flight to Avoid Prosecution, in Violation of Title 18, United States Code, Section 1073, are located in the Target Backpack as described in Attachment A. I therefore request that the court issue a warrant authorizing a search for the items more fully described in Attachment B hereto, incorporated herein by reference, and the seizure of any such items found therein.

_____
Special Agent Jessica Hefron
Federal Bureau of Investigation

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 14th day of October, 2022.

_____
Honorable Barbara L. Major
United States Magistrate Judge

# **Attachment A**

Property to be Searched

The following property is to be searched:

    A black backpack
    ("Target Backpack")

The Target Backpack is currently in the possession of the Federal Bureau of Investigations, located at 10385 Vista Sorrento Pkwy, San Diego, California, 92121.

# Attachment B

Particular Things to be Seized

The items to be seized are the following items or materials that may contain evidence of the commission of, the fruits of, or property which has been used as the means of committing, federal criminal violations of Title 18, United States Code, Section 1343 and 2 (Wire Fraud) and Title 5, United States Code, Sections 78(j)(b) and 78ff and Title 17, Code of Federal Regulations, 240.10b-5 (Securities Fraud) for the time period of January 1, 2019 to the present:

1. Evidence of any attempt or plan to manipulate the price of any stock or other securities, including evidence of: (a) planning or executing a plan to obtain control of a company's publicly-traded securities, (b) matched, cross, or wash trading, and (c) communications concerning promoting stock or other securities;

2. Evidence of the solicitation of any investor or potential investor;

3. Evidence related to the receipt of investment proceeds or any payments to investors or potential investors;

4. Evidence related to the transfer, purchase, sale, or disposition of stock or other securities;

5. Evidence related to financial transactions associated with Justin Costello, any entity under his control, or any individual working at the direction of Costello, including bank accounts or brokerage accounts held by Justin Costello, any entity under his control, or any individual working at the direction of Costello, expenditures of money or wealth, and bank and brokerage records;

6. Evidence related to the receipt of investor funds, including the amount, purpose of investment, and plans for spending or investing the funds;

7. Evidence related the possible transfer or disposition of the proceeds of the fraud, including but not limited: to accounts at banks or other financial institutions; financial transactions or transfers; the purchase, transfer or sale of assets; the use of the proceeds of the fraud to buy real property, vehicles, or goods or services; and any explanations, reports, or other information regarding the amount and sources of funds or other income;

8. Evidence of any communications between Justin Costello, any entity under his control, or any individual working at the direction of Costello and any investors or potential investors;

9. Evidence of any communications by Justin Costello, any entity under his control, or any individual working at the direction of Costello concerning any entity under Costello's ownership or control;

10. Evidence relating to efforts to evade law enforcement or securities regulators, to include communications with others related to these efforts;

11. Gold coins, gold bars, cash, or other valuables that may be the proceeds of fraud;

12. Evidence of unlawful flight from law enforcement, including currency, false identification, travel documents, and valuables;

13. Digital devices or other electronic storage media and/or their components for records described in paragraphs 1 through 10 above. The digital devices and electronic storage media include:

    a. Any digital device or other electronic storage media capable of being used to commit, further, or store evidence of the offenses listed above;

    b. Any digital devices or other electronic storage media used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, cameras, printers, plotters, encryption devices, and optical scanners;

    c. Any magnetic, electronic, or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants;

    d. Any documentation, operating logs and reference manuals regarding the operation of the digital device or other electronic storage media or software;

    e. Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched;

    f. Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

    g. Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data.

14. For any digital devices or other electronic storage media upon which electronically stored information that is called for by this warrant may be contained, or that may contain things otherwise called for by this warrant:

    a. Evidence of who used, owned, or controlled the digital device or other electronic storage media at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and

      passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b. Evidence of software that would allow others to control the digital device or other electronic storage media, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c. Evidence of the lack of such malicious software;

d. Evidence of the attachment to the digital device of other storage devices or similar containers for electronic evidence;

e. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the digital device or other electronic storage media;

f. Evidence of the times the digital device or other electronic storage media was used;

g. Passwords, encryption keys, and other access devices that may be necessary to access the digital device or other electronic storage media;

h. Documentation and manuals that may be necessary to access the digital device or other electronic storage media or to conduct a forensic examination of the digital device or other electronic storage media;

i. Contextual information necessary to understand the evidence described in this attachment.

The seizure of digital devices or other electronic storage media and/or their components as set forth herein is specifically authorized by this search warrant, not only to the extent that such digital devices or other electronic storage media constitute instrumentalities of the criminal activity described above, but also for the purpose of the conducting of off-site examinations for their contents for evidence, instrumentalities, or fruits of the aforementioned crimes.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.